IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY EVENTS, LLC d/b/a LIBERTY WAREHOUSE, <br><br> Defendant. | Civil Action No. 20-cv-4631 <br> ECF Case <br><br> **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Charging Party Estefany Lucero and a class of female kitchen staff who were adversely affected by such practices. For years, Defendant Liberty Events, LLC d/b/a Liberty Warehouse ("Liberty Warehouse") has employed, and continues to employ, a head chef who subjects his female kitchen staff to unwanted sexual touching, comments, and gestures; premises the receipt of raises on sexual favors; requires female kitchen staff to serve beer to their male counterparts; and fires women who reject his advances. Throughout this time, Defendant has lacked the anti-discrimination and anti-harassment policies that might have prevented or corrected this unlawful conduct. As alleged with greater particularity in paragraphs 12-16 below, Defendant discriminated against Lucero and the class by subjecting them to sexual harassment, a hostile work environment on the basis of sex, and/or unlawful discharge because of their sex, and Lucero was further discriminated and retaliated against, including when

1

Defendant withheld money she had earned or won at work, subjected her to unequal pay, and terminated her employment because of her sex and her rejection of her supervisor's sexual advances.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of New York.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. Defendant is a wedding venue and event space in Brooklyn, New York.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Lucero filed a charge with the Commission alleging violations of Title VII by Defendant.

7. The Commission sent Defendant notice of Lucero's charge.

8. On July 10, 2020, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On July 10, 2020, the Commission also issued a letter outlining the proposed terms of conciliation and allowed Defendant an opportunity to respond. Thereafter, the Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. On July 29, 2020, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least 2015 and continuing through the present, Defendant has engaged in unlawful employment practices, in violation of Sections 703 and 704 of Title VII, 42 U.S.C. §§ 2000(e)-2, 2000(e)-3.

    a. Defendant's Head Chef (hereinafter, "the chef") makes hiring and firing decisions for employees working in the kitchen at Liberty Warehouse. Those kitchen employees include sous chefs and cooks (who are also called kitchen aides).

    b. A cook's main duties involve working in Liberty Warehouse's kitchen at various food stations to cook and prepare food for weddings and other events held at Liberty Warehouse.

c. The chef assigns each cook's weekly work schedule, including the hours and days they will work.

d. In August 2015, the chef hired Lucero as a cook, at a rate of $12.50/hour.

e. From at least 2015 to the present, the chef subjected Lucero and a class of female kitchen staff to sexual harassment and/or a hostile work environment on the basis of sex, which, in some instances, ended with an unlawful termination.

   i. Beginning about six months after her hire, the chef subjected Lucero to sexual harassment, including regular unwanted touching, frequent sexually suggestive comments, demands for quid pro quo sexual favors, sexual gestures, and calling Lucero into work for the apparent purpose of spending time alone with the chef.

      1. For example, the unwanted touching included regularly massaging Lucero's shoulders and grabbing her thigh, including twice grabbing her inner thigh. The sexual comments[1] included, by way of example, words to the effect of "you smell wonderful," "you make me nervous," "you make me crazy," "I need a good massage," or, when Lucero was cooking, "make it *cachondo* [hot and horny] like you were last night."

      2. Lucero repeatedly informed the chef that the sexual harassment was unwelcome, but he did not stop.

---

[1] All conversations between the chef and kitchen staff that are recounted in this Complaint occurred in Spanish, but are translated into English.

3. The chef made repeated quid pro quo demands for sexual favors from Lucero. For example, he would say she had to be "nice" to him or "behave the same way towards me as I'm behaving towards you" (or words to that effect), because he had given her extra hours or, on one occasion, a raise. As described below, he also premised other terms and conditions of employment on her being "nice." Lucero understood that these were requests for sexual favors because of his facial expression and tone of voice, and because when she responded that she would not sleep with him, he did not deny that this was his intent.

ii. The chef also sexually harassed a class of female kitchen staff, including through unwanted sexual touching, comments, and gestures.

1. By way of example, one female cook was sexually harassed by the chef beginning in 2018, and then constructively discharged in 2020. She experienced repeated unwanted touching and frequent unwanted sexual comments and gestures, despite her demands that this conduct stop. When she reported the chef's conduct to a sous chef, she was told the chef acted that way towards many women, and no action was taken. After she again confronted the chef about his inappropriate conduct, he told her she was fired. When she continued to show up for work, he made it known to her and others that he intended to fire her, increased her workload (without

increasing her pay), and subjected her to unwarranted scrutiny until she was forced to resign.

iii. The chef subjected Lucero and a class of female kitchen staff to a hostile work environment based on sex.

    1. The chef assigned to female kitchen staff tasks that took more effort than those assigned to men, or which were humiliating and gendered, like requiring female kitchen staff to clean while male kitchen staff relaxed and drank beer, and requiring female kitchen staff to serve beer to their male coworkers, despite their objections that this was not their job.

    2. The chef yelled at female kitchen staff in insulting, humiliating, or extreme ways that were different from how he treated male kitchen staff. For example, he threw food and objects at female kitchen staff, called them stupid and useless, and referred to them by belittling nicknames.

f. The chef further discriminated against Lucero and retaliated against her for rejecting his sexual advances by, for example, withholding money she had earned or won, cutting her hours, terminating her employment, and premising her reinstatement and receipt of a year-end bonus on sexual favors.

i. Around late November 2018, the chef withheld $200 from Lucero's winnings in a workplace lottery, saying that if she was "nicer" to him, he would give her, from his own pocket, $200 and more money. She never received that $200 in workplace lottery winnings.

ii. In late December 2018, the chef severely cut Lucero's working hours and then stopped scheduling her to work at all, effectively terminating her employment on or around December 23, 2018.

   1. The chef continued to schedule other kitchen staff to work in December 2018 and January 2019.

   2. The chef told Lucero he could reinstate her immediately, if she returned the favor and was "nice" to him; or, he said, it could be weeks or months until she worked again. He told her words to the effect of, "Like I told you, all of this depends on you."

iii. The chef refused to give Lucero her year-end bonus check, similarly stating that he could give her a bonus and more money, from his own pocket, if she was "nicer" to him. Lucero never received her year-end bonus check.

iv. In or around January 2019, the chef confronted Lucero while she was working her second job as a supermarket cashier, claimed he would give her a raise, and tried to get her to accept a roll of money. She refused the money and told him she would not sleep with him.

v. On or around January 13, 2019, the chef erased Lucero's name from the work schedule.

vi. On January 16, 2019, the chef hired a new, male cook.

vii. In February 2019, Lucero complained to the chef's supervisor, the Director of Catering, about the sexual harassment and her unlawful

termination. She requested that he take action to stop the sexual harassment.

    1. Lucero showed the Director of Catering the surveillance video of the chef confronting her in the supermarket.

    2. The Director of Catering stated that he had given Lucero's bonus check to the chef.

    3. Defendant refused to reinstate Lucero.

g. Throughout her employment, Liberty Warehouse's unlawful discrimination and retaliation affected Lucero's rate of pay.

  i. The chef sets the initial rate of pay and determines the amount and frequency of pay raises for kitchen employees at Liberty Warehouse.

  ii. Lucero did work of substantially equal or greater skill, effort, and responsibility as compared to any other cook working at Liberty Warehouse. She rotated among all of the food stations except salad dressings. She was assigned to carry ice, change out the meat containers, and clean. She sometimes helped prepare the employee meal. She also helped to train other employees.

  iii. Cooks at Liberty Warehouse worked in the same location, in the same physical surroundings, and with the same hazards.

  iv. When Lucero was hired, her rate of pay was set lower than that of male cooks.

    1. For example, in September 2015, the chef hired Lucero's husband as a cook, to perform the same job as Lucero.

  2. Lucero's husband had substantially equal or lesser relevant skills than Lucero.

  3. The chef set Lucero's husband's salary at $13.00/hour.

  4. Lucero's husband quit working for Liberty Warehouse in September or October 2015.

 v. The chef repeatedly passed Lucero over for raises given to other cooks, including raises purportedly justified by minimum wage increases.

  1. For example, a male cook hired approximately a year after Lucero received four raises and was making $18.00/hour by the time Lucero was fired.

  2. More than two years into her employment, having received no raises, Lucero had become the lowest paid cook in the kitchen, even though she had nearly the longest tenure. For example, in September 2017, while Lucero earned $12.50/hour, other cooks earned between $13.00 (for new hires) to $18.50/hour.

  3. When Lucero received her one raise in October 2017, the chef told her he expected sexual favors in return for that raise. He also offered her additional raises, in exchange for sexual favors. She never acquiesced to his demands and she never received another raise.

  4. One inexperienced female cook, approximately age 21, whom Lucero observed playing along with the chef's sexually harassing conduct, was paid an hourly wage that was higher than what the

chef paid his sous chef. This cook received three raises in approximately three years working for Liberty Warehouse.

 h. Additionally, at all relevant times, Liberty Warehouse lacked anti-sex discrimination and anti-sex harassment policies and training.

  i. Through at least March 2020, Liberty Warehouse had not trained the chef or the Director of Catering on any anti-sex discrimination or anti-sex harassment policy and they were unaware of one existing.

  ii. Through at least August 2020, Liberty Warehouse had not trained its kitchen employees on any anti-sex discrimination or anti-sex harassment policy.

13. The effect of the practices complained of in paragraph 12 above has been to deprive Lucero and a class of female kitchen staff of equal employment opportunities and otherwise adversely affect their status as employees, because of their sex and opposition to employment practices made unlawful by Title VII.

14. The unlawful employment practices complained of in paragraph 12 above were intentional.

15. The unlawful employment practices complained of in paragraph 12 above were done with malice or with reckless indifference to the federally protected rights of Lucero and a class of female kitchen staff.

16. The effects of the practices complained of in paragraph 12 above have been to inflict emotional pain, suffering, and inconvenience upon Lucero and a class of female kitchen staff and deprive them of the financial and other benefits of working for Defendant.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from sexually harassing female kitchen staff, subjecting them to a hostile work environment, subjecting them to unequal pay, or withholding monies earned or won, on account of their sex and/or their opposition to practices made unlawful by Title VII.

B.Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for female kitchen staff and which eradicate the effects of Defendant's past and present unlawful employment practices.

C.Order Defendant to make Lucero and the class of female kitchen staff whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices, including but not limited to front pay or reinstatement of Lucero.

D.Order Defendant to make Lucero and a class of female kitchen staff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 12-16 above, in amounts to be determined at trial.

E.Order Defendant to make Lucero and a class of female kitchen staff whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 12-16 above, including emotional pain, suffering, humiliation, anxiety, stress, mental anguish, inconvenience, and other nonpecuniary losses, in amounts to be determined at trial.

F. Order Defendant to pay Lucero and a class of female kitchen staff punitive damages for its malicious and reckless conduct, as described in paragraphs 12-16 above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: September 29, 2020
New York, New York

SHARON FAST GUSTAFSON
General Counsel

ROBERT A. CANINO
Acting Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, N.E.
Washington, D.C. 20507

JEFFREY BURSTEIN
Regional Attorney

RAECHEL ADAMS
Supervisory Trial Attorney

/s/ Liane T. Rice
LIANE T. RICE (NY ID #4781993)
Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(929) 506-5278 (telephone)
(212) 336-3623 (fax)
liane.rice@eeoc.gov